**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| PALM AND PINE VENTURES, LLC, and MDH GLOBAL, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **CASE NO. _____** |
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON, UNDERWRITERS AT LLOYD'S LONDON KNOWN AS SYNDICATE XLC 2003, CNP 4444, NVA 2007, QBE 1886, ARG 2121, and ASC 1414, and HDI GLOBAL SPECIALTY SE, | ) ) ) ) ) ) ) | **CLASS ACTION** **JURY DEMAND** |
| Defendants. | ) ) ) ) ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Palm and Pine Ventures, LLC ("Palm & Pine") and MDH Global, LLC ("MDH Global") (together, "Plaintiffs"), on behalf of themselves and all others similarly situated, state as follows for their Complaint against Defendants Certain Underwriters at Lloyd's London ("Underwriters"); Underwriters at Lloyd's London known as Syndicate XLC 2003, CNP 4444, NVA 2007, QBE 1886, ARG 2121, and ASC 141 (the "Syndicates"), and HDI Global Specialty SE ("HDI Global") (together, "Defendants"):

## INTRODUCTION

1.      This is a class action brought by Plaintiffs Palm & Pine and MDH Global against Defendants related to insurance policies that insure Plaintiffs' properties, business operations, and potential liability in connection with Plaintiffs' business operations. These insurance policies

1

include Business Income coverage, Extra Expense coverage, and coverage for loss due to the actions of a Civil Authority, and contain no relevant virus exclusion.

2. Plaintiffs are two small businesses with common ownership that purchased Defendants' insurance policy and made premium payments for a policy that, in the event of a catastrophe requiring a shutdown of business operations, would require Defendants to honor their contractual obligation to provide coverage. In March 2020, such a catastrophe took place when Plaintiffs were forced to close their vacation rental businesses due to the COVID-19 pandemic. All across the country, including in North Carolina, government authorities issued closure orders to businesses, including the businesses operated by Palm & Pine and MDH Global, in an effort to stop the rapid spread of the deadly COVID-19 virus. Orders from Civil Authorities requiring businesses to close have resulted in massive losses to businesses throughout the country. As a result, many insureds, including Plaintiffs, filed claims for Business Income coverage, Extra Expense coverage, and coverage for losses due to the actions of a Civil Authority.

3. In response to the business interruption claims filed by Plaintiffs and thousands of other class members resulting from the COVID-19 pandemic, Defendants have systematically denied and continue to deny and refuse to provide payment for insurance claims for coverage for similar losses and expenses by insureds holding policies that are, in all material respects, identical. Defendants' decision to not provide coverage and/or its decision to refuse to pay claims under the common policy forms issued to Plaintiffs and the putative class members constitutes a breach of contract and provides them with the right to seek a declaratory judgment pursuant to 28 U.S.C. § 2201(a) on behalf of itself and the class members establishing that they are entitled to receive the benefit of the insurance coverage it purchased and for indemnification of the businesses losses it has sustained.

## PARTIES, JURISDICTION AND VENUE

4.      Plaintiff Palm & Pine is a limited liability company organized under Nevada law with its principal place of business located at 1513 Gilder Court, Kill Devil Hills, North Carolina 27948. Palm & Pine operates a vacation rental company. One or more of the members of Palm & Pine are citizens of North Carolina.

5.      Plaintiff MDH Global is a limited liability company organized under Nevada law with its principal place of business located at 1513 Gilder Court, Kill Devil Hills, North Carolina 27948. MDH Global operates a vacation rental company. One or more of the members of MDH Global are citizens of North Carolina.

6.      Defendant Underwriters at Lloyd's London is composed of syndicates of individual underwriters that share respective and several liability under an insurance policy. Underwriters at Lloyd's London is, in turn, comprised of entities known as "Names," which underwrite insurance in a market known as Lloyd's of London. Each "Name" and syndicate is organized under the laws of the United Kingdom and is located in and has its principal place of business in England.

7.      Upon information and belief, the liabilities under Palm and Pine's insurance policy is shared among a syndicate of underwriters identified by a pseudonym and respective allocation of liability: XLC 2003 (36.4841%); CNP 4444 (4.8145%); QBE 1886 (14.4434%); ARG 2121 (9.6290%); and ASC 1414 (9.6290%). The remaining 25% of liability is shared by HDI Global Specialty SE.

8.      Upon information and belief, the liabilities under MDH Global's insurance policy are shared among a syndicate of underwriters identified by a pseudonym and respective allocation of liability: XLC 2003 (37.89%); CNP 4444 (15.10%); NVA 2007 (12.81%); ARG 2121 (10.61%); and ASC 1414 (8.49%). The remaining 15.10 of liability is shared by HDI Global Specialty SE.

3

9.      Defendant HDI Global Specialty SE is a European society company organized under the laws of Germany, with its principal place of business in Germany. HDI Global is a wholly owned subsidiary of Talanx AG, a publicly traded company organized under the laws of Germany, with its principal place of business in Germany. At all times material, HDI Global, Talanx AG, and other Talanx subsidiaries engaged in continuous and not isolated activity in the United States and specifically in North Carolina, including but not limited to contracting to insure property located in North Carolina.

10.     Defendants are an insurance company engaged in the business of selling insurance contracts to commercial entities such as Plaintiff in North Carolina and in all fifty states, including by and through its wholly-owned subsidiaries.

11.     At all times material, Defendants engaged in substantial and not isolated activity on a continuous and systematic basis in the state of North Carolina by issuing and selling insurance policies in North Carolina and by contracting to insure property located in North Carolina.

12.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because it involves citizens of different states and the amount in controversy exceeds $75,000.

13.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because there is diversity between Defendants and at least one member of each class; there are more than one hundred members of each class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs. This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the claim occurred in this district and/or a substantial party of the property that is the subject of the action is situated in this district.

15.     This Court has personal jurisdiction over Defendants because Plaintiffs' claims arise out of, among other things, Defendants conducting, engaging in, and/or carrying on business in North Carolina; Defendants breaching a contract in this state by failing to perform acts required by contract to be performed in this state; and Defendants contracting to insure property in North Carolina. Defendants also purposefully availed themselves of the opportunity of conducting activities in the state of North Carolina by marketing their insurance policies and services within the state, and intentionally developing relationships with brokers, agents, and customers within the state to insure property within the state, all of which resulted in the policy at issue in this action.

## FACTUAL BACKGROUND

### A.  *Insurance Coverage*

16.     On or about February 4, 2020, Palm & Pine renewed the Policy, a property insurance policy issued and underwritten by Defendants. The insured premises under the policy is 119 East Avalon Street, Kill Devil Hills, NC 27948. A copy of the Palm & Pine Policy is attached as Exhibit A.

17.     On or about February 4, 2020, MDH Global renewed the Policy, a property insurance policy issued and underwritten by Defendants. The insured premises under the policy is 209 East Hayman Boulevard, Kill Devil Hills, NC 27948. A copy of the MDH Global Policy is attached as Exhibit B. As the policies are identical in all material respects, this complaint refers to them together as the "Policy."

5

18. The Policy uses standard common forms that contain the same and/or substantially similar provisions at issue in this action as those issued by Defendants to the members of the putative class as defined herein.

19. The Policy is an all-risk insurance policy. In an all-risk insurance policy, all risks of loss are covered unless they are specifically excluded.

20. In accordance with the all-risk nature of the Policy, Defendants agreed to pay for all losses caused by a "Covered Cause of Loss," defined as 'Risks of Direct Physical Loss, unless the loss is excluded under the Policy."

21. One type of coverage provided by the Policy is for loss of business income, often called business interruption insurance. This coverage is specifically provided for in a section of the Policy titled "Vacation Rental Business Income Coverage."

22. Pursuant to this Form, Defendants promised to pay for "Loss of Business Income" caused by a Covered Cause of Loss. Specifically, Defendants promised to pay for the loss of Business Income sustained due to the necessary "suspension" of the insured's "operations" during the "period of restoration."

23. The Policy defines "Business Income" as "the gross revenue from overnight and event rental of the property listed in the declaration that would have been earned or incurred if no physical loss had occurred less any expenses that did not continue due to the suspension of your operation."

24. "Period of Restoration" means the period of time that:

    a. Begins with the date of direct physical loss caused by or resulting from any Covered Cause of Loss at the described premises; and

b. Ends on the date by which the property at the described premises should have been repaired, rebuilt or replaced with all due reasonable speed of and similar quality.

25. Additionally, under the Policy, Defendants also promised to cover "Extended Business Income." This coverage requires Defendants to pay for loss of business income beyond the Period of Restoration under certain conditions.

26. The Policy also provides a coverage for extra expenses in a section titled "Extra Expense." Pursuant to this section of the Policy, Defendants promised to pay for "necessary expenses that you would have not incurred if there had been no direct physical loss to property at the described premises, including personal property in the open (or in a vehicle) within 100 feet, caused by or resulting from a Covered Cause of Loss."

27. The Policy also provides "Civil Authority" coverage for "the actual loss of 'Business Income' you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss. This coverage will apply for a period of up to 90 consecutive days from the date of that action."

28. The Civil Authority coverage is an independent basis for business interruption coverage that can be triggered even when the standard business interruption coverage is not.

29. Plaintiffs' Policy does not contain any exclusion that would apply to allow Defendants to deny coverage for losses caused by the interruption of Plaintiffs' business and the actions of civil authorities.

30. The Policy does not contain any exclusion which would apply to allow Defendants to completely deny coverage for losses caused by COVID-19 and related actions of civil authorities taken in response to COVID-19.

7

31.     Because the Policy is an all-risk policy and does not exclude Plaintiffs' losses, Plaintiffs' losses are covered up to the applicable limits of insurance.

**B.  *The COVID-19 Pandemic***

32.     COVID-19 is a novel coronavirus that originated in Wuhan, China at the end of 2019 and rapidly spread around the world, infecting millions of people, including over 2.15 million Americans. Over 220,000 Americans have died due to COVID-19.

33.     COVID-19 is a physical substance that can cause lethal illness. COVID-19 can be present outside the body in viral fluid particles. COVID-19 is highly contagious and easily communicable through droplets in the air and on surfaces.

34.     The scientific community, and those personally affected by the virus, recognize COVID-19 as a cause of real physical loss and damage. Contamination of the Insured Property would be a direct physical loss requiring remediation to clean the surfaces within the Insured Property.

35.     COVID-19 remains capable of being transmitted on a variety of inert physical surfaces for various periods of time. For example, reports issued by the National Institute of Health ("NIH") indicates that COVID-19 remains stable and transmittable in airborne aerosols for up to three hours, on copper for up to four hours, on cardboard for up to 24 hours, and on plastic and stainless steel for up to two to three days. Moreover, the COVID-19 pandemic has been exacerbated by the fact that the virus physically infects and stays on surfaces of some objects or materials for up to 28 days.

36.     The Center for Disease Control ("CDC") has issued guidance recommending people not to gather in groups larger than 10. Pursuant to CDC guidelines, people face increased

danger of contracting COVID-19 in places where people congregate and are in close proximity to one another, and especially in indoor environments.

37.     COVID-19 has been transmitted in a variety of ways, including transmission (a) by way of human contract with surfaces and items of physical property; (b) by human to human contact and interaction, including places like bars and restaurants, retail stores, and hair and beauty salons, and the like; and (c) through airborne particles emitted into the air and even recirculated through air conditioning units.

38.     The presence of COVID-19 particles renders physical property unsafe and impairs its value, usefulness, and/or normal function, causing direct physical harm to property and resulting in direct physical loss and physical damage to property.

39.     The presence of COVID-19 particles and/or the presence of persons infected with COVID-19 or carrying COVID-19 particles at premises renders the premises unsafe, thereby impairing the premises' value, usefulness, and/or normal function, and resulting in direct physical loss to and of the premises and property.

C.  *The Covered Cause of Loss*

40.     The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiffs' business (the "Closure Orders").

41.     Without a vaccine to protect against COVID-19, effective control of the outbreak relies on measures designed to reduce human-to-human and surface-to-human exposure. Information on the CDC's website provides that COVID-19 spreads when people are within six feet of each other or when a person comes in contact with a surface or object that has the virus on

it. Various other sources state that close contact with a person with the virus or surfaces where the virus is found can transmit the virus.

42.     The secondary exposure of humans to contaminated surfaces is particularly acute in places where the public gathers to socialize, eat, drink, shop, find entertainment, and recreate. This is why the CDC recommends that in viral outbreaks individuals who are infected stay at home and those who are not sick engage in preventive measures such as constant hand washing and avoiding activities that would bring them into the close proximity of people with the virus or surfaces where the virus may reside. However, because these recommendations have proven ineffective to minimize the spread of COVID-19, containment efforts have led to civil authorities issuing orders closing non-essential business establishments, including restaurants, bars, hotels, theaters, personal care salons, gyms, and schools, and mandating social distancing among the population. This has caused the cancelation of sporting events, parades, and concerts, the closure of amusement parks, and substantial travel restrictions. In addition, to conserve medical supplies, orders have been issued prohibiting the performance of non-urgent or non-emergency elective procedures and surgeries, forcing the suspension of operations at many medical, surgical, therapeutic, and dental practices.

43.     As of the date this Complaint is filed, North Carolina had over 250,000 total positive cases of COVID-19, and over 4,000 deaths.

44.     In response to the public health emergency caused by the COVID-19 pandemic, civil authorities across the United States, including the civil authorities with jurisdiction over Plaintiff in North Carolina, have issued Closure Orders restricting and prohibiting access to Plaintiffs' insured property and the insured properties of other putative class members.

10

45.     In North Carolina, Governor Cooper issued a "Stay At Home" order on March 29, 2020, which required all non-essential businesses to close, including Plaintiffs'.

46.     State and federal courts across the country have already agreed with Plaintiff's position that physical loss and damage exists resulting in coverage here. Furthermore, Closure Orders issued in states such as New York, Colorado, Washington, Indiana, New Mexico, North Carolina, Missouri, and Illinois have all recognized that COVID-19 poses a specific threat to property and can cause property loss and damage.

47.     Indeed, a North Carolina trial court recently granted summary judgment for a group of sixteen restaurants that sued their property insurance company pursuant to a materially similar business interruption policy. *See North State Deli, LLC, et al. v. The Cincinnati Ins. Co. et al*., No. 20-CVS-02569 (N.C. Super. Ct. Oct. 9, 2020). The North Carolina court concluded that the losses caused by the pandemic are a "direct physical loss" that afford coverage for business interruption losses.

48.     The Closure Orders issued by North Carolina authorities covering North Carolina non-essential businesses (such as Plaintiffs') are similar to Closure Orders that have been issued nationwide by state and local civil authorities. Specifically, all but five states enacted COVID-19 Civil Authority Orders, including but not limited to "stay-at-home" or "shelter-in-place" orders; 35 states closed all non-essential businesses, with other states enacting measures to curtail business operations; all 50 states closed schools; and all but one state closed restaurants and bars for services other than take-out and delivery.

49.     The presence of COVID-19 caused direct physical loss of and/or damage to the Insured Property under the Policy by, among other things, damaging the property, denying access to the property, preventing customers and patients from physically occupying the property, causing

11

the property to be physically uninhabitable by customers and patients, causing its function to be nearly eliminated or destroyed, and/or causing a suspension of business operations on the premises. Plaintiff also suffered a "direct physical loss of and damage to" its property in the form of diminished value, lost income, and forced physical alterations during the period of restoration.

50.     The Closure Orders of civil authorities prohibited access to Plaintiff and other class members' Insured Properties, and the areas immediately surrounding the Insured Properties, in response to dangerous physical conditions resulting from a covered cause of loss.

51.     As a result of the presence of COVID-19 and the Closure Orders, Plaintiff and other class members sustained a suspension of business operations, sustained losses of business income, and incurred extra expenses.

52.     Plaintiffs' losses and expenses have continued through the date of filing this action.

53.     Plaintiffs' losses and expenses are not excluded from coverage under the Policy. Because the Policy is an all-risk policy and Plaintiff has complied with its contractual obligations, Plaintiff is entitled to payment for these losses and expenses.

54.     Consistent with the terms and procedures of the Policy, Plaintiff submitted a claim for loss to Defendants under the Policy due to the presence of COVID-19 and the shutdown Civil Authority orders.

55.     In violation of the Policy's plain language and its own contractual obligations, Defendants denied Plaintiffs' claim and refuse to pay for Plaintiffs' losses and expenses.

**D.** ***The COVID-19 Pandemic Has Affected Policyholders Nationwide***

56.     COVID-19 is physically impacting private commercial property throughout the United States and the State of North Carolina, threatening the survival of thousands of restaurants,

personal care services businesses, retail establishments, and other businesses that have had their business operations suspended or curtailed indefinitely by order of civil authorities.

57.     Defendants do not intend to cover losses caused by the COVID-19 pandemic as part of business interruption coverage. As aforementioned, Defendants denied Plaintiffs' claims. Upon information and belief, Defendants have denied similar claims by other Class members across-the-board, a practice which is belied by not only the express terms of the insurance policies, but also: (a) the Small Business Administration's requirement that "reimbursement" from "business interruption insurance" be submitted along with an application for an Economic Injury Disaster Loan ("EIDL") loan; and (b) American's SBDC, which represents America's nationwide network of Small Business Development Centers (SBDCs), whose COVID-19 newsletter expressly states, "Business interruption insurance also applies if government actions cause operations to cease temporarily, which results in a loss for a firm."

58.     As a result, many small businesses that maintain commercial multiperil insurance policies with business interruption coverage will have significant uninsured losses absent declaratory relief from this Court. Indeed, even if state and local governments re-open, as some have, small businesses will almost certainly still be under social-distancing mandates and will continue to experience diminishing revenues due to the loss of covered property. These businesses, like Plaintiffs', also remain susceptible to additional governmental decrees suspending or curtailing operations. A declaratory judgment determining that the coverages provided in Defendants' standard commercial property insurance policies applies to the suspension, curtailment, and interruption of business operations resulting from measures put into place by civil authorities is necessary to prevent Plaintiffs and similarly situated Class members from being denied critical coverage for which they have paid premiums.

## CLASS ACTION ALLEGATIONS

59. Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

60. Plaintiffs seek to represent nationwide classes defined as:

   a. All persons and entities with Vacation Rental Business Income coverage under a property insurance policy issued by Defendants that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

   b. All persons and entities with Vacation Rental Civil Authority coverage under a property insurance policy issued by Defendants that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

   c. All persons and entities with Vacation Rental Extra Expense coverage under a property insurance policy issued by Defendants that sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their property insurance policy (the "Extra Expense Declaratory Judgment Class").

61. Excluded from each defined Class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members. Plaintiffs reserve the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

14

62.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

63.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of each defined Class are so numerous that individual joinder of all Class Members is impracticable. While Plaintiffs are informed and believes that there are thousands of members of each Class, the precise number of Class Members is unknown to Plaintiffs but may be ascertained from Defendants' books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

64.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class Members, including, without limitation:

a.  Defendants issued all-risk policies to the members of the Class in exchange for payment of premiums by the Class Members;

b.  whether the Class suffered a covered loss based on the common policies issued to members of the Class;

c.  whether Defendants wrongfully denied all claims based on COVID-19;

d.  whether Defendants' Business Income coverage applies to a suspension of business caused by COVID-19;

e.  whether Defendants' Civil Authority coverage applies to a loss of Business Income caused by the orders of state governors requiring the suspension of business as a result of COVID-19;

15

f.   whether Defendants' Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

g.  whether Defendants have breached their contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to COVID-19 and the related closures; and

h.  whether Plaintiffs and the class are entitled to an award of reasonable attorney fees, interest and costs.

65.    **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the other Class Members' claims because Plaintiffs and the other Class Members are all similarly affected by Defendants' refusal to pay under their Business Income, Civil Authority, and Extra Expense coverages. Plaintiffs' claims are based upon the same legal theories as those of the other Class Members. Plaintiffs and the other Class Members sustained damages as a direct and proximate result of the same wrongful practices in which Defendants engaged.

66.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are an adequate Class representative because their interests do not conflict with the interests of the other Class Members who they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiffs intend to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiffs and their counsel.

67.    **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).** Plaintiffs seek class-

wide adjudication as to the interpretation, and resultant scope, of Defendants' Business Income, Civil Authority, and Extra Expense coverages. The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendants. Moreover, the adjudications sought by Plaintiffs could, as a practical matter, substantially impair or impede the ability of other Class Members, who are not parties to this action, to protect their interests.

68. **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendants acted or refused to act on grounds generally applicable to Plaintiffs and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class Members.

69. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE
### (Claim Brought on Behalf of the Business Income Declaratory Judgment Class)

70. Plaintiffs repeat and reallege Paragraphs 1-69 as if fully set forth herein.

71. Plaintiffs bring this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class.

72.     Plaintiffs' Policy with Defendants, as well as those of the other Business Income Declaratory Judgment Class Members, are contracts under which Defendants were paid premiums in exchange for their promise to pay Plaintiffs and the other Business Income Declaratory Judgment Class Members' losses for claims covered by the policy.

73.     Plaintiffs and the other Business Income Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendants, or Defendants are estopped from asserting them, and yet Defendants have abrogated their insurance coverage obligations pursuant to the policies' clear and unambiguous terms and have wrongfully and illegally refused to provide coverage to which Plaintiffs and the other Business Income Declaratory Judgment Class Members are entitled.

74.     Defendants have denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

75.     An actual case or controversy exists regarding Plaintiffs and the other Business Income Declaratory Judgment Class Members' rights and Defendants' obligations under the policies to reimburse Plaintiffs for the full amount of Business Income losses incurred by Plaintiffs and the other Business Income Declaratory Judgment Class Members in connection with suspension of their businesses stemming from the COVID-19 pandemic.

76.     Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Business Income Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

a.  Plaintiffs and the other Business Income Declaratory Judgment Class Members' Business Income losses incurred in connection with the Closure Orders and the

necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

b.  Defendants are obligated to pay Plaintiffs and the other Business Income Declaratory Judgment Class Members for the full amount of the Business Income losses incurred and to be incurred in connection with the Closure Orders during the relevant time period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT II**
**DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)**

77.  Plaintiffs repeat and reallege Paragraphs 1-69 as if fully set forth herein.

78.  Plaintiffs bring this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

79.  Plaintiffs' insurance policy with Defendants, as well as those of the other Civil Authority Declaratory Judgment Class Members, are contracts under which Defendants were paid premiums in exchange for their promise to pay Plaintiffs and the other Civil Authority Declaratory Judgment Class Members' losses for claims covered by the policy.

80.  Plaintiffs and the other Civil Authority Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendants, or Defendants are estopped from asserting them, and yet Defendants have abrogated their insurance coverage obligations pursuant to the policies' clear and unambiguous terms and have wrongfully and illegally refused to provide coverage to which Plaintiffs and the other Class Members are entitled.

19

81. Defendants have denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

82. An actual case or controversy exists regarding Plaintiffs and the other Civil Authority Declaratory Judgment Class Members' rights and Defendants' obligations under the policies to reimburse Plaintiffs and the other Civil Authority Declaratory Judgment Class Members for the full amount of covered Civil Authority losses incurred by Plaintiffs and the other Civil Authority Declaratory Judgment Class Members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

83. Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Civil Authority Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

    a. Plaintiffs and the other Civil Authority Declaratory Judgment Class Members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

    b. Defendants are obligated to pay Plaintiffs and the other Civil Authority Declaratory Judgment Class Members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## COUNT III
## DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE
### (Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)

84. Plaintiffs repeat and reallege Paragraphs 1-69 as if fully set forth herein.

85.     Plaintiffs bring this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

86.     Plaintiffs' insurance policy with Defendants, as well as those of the other Extra Expense Declaratory Judgment Class Members, are contracts under which Defendants were paid premiums in exchange for their promise to pay Plaintiffs and the other Extra Expense Declaratory Judgment Class Members' losses for claims covered by the policy.

87.     Plaintiffs and the other Extra Expense Declaratory Judgment Class Members have complied with all applicable provisions of the policies and/or those provisions have been waived by Defendants, or Defendants are estopped from asserting them, and yet Defendants have abrogated their insurance coverage obligations pursuant to the policies' clear and unambiguous terms and have wrongfully and illegally refused to provide coverage to which Plaintiffs and the other Class Members are entitled.

88.     Defendants have denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

89.     An actual case or controversy exists regarding Plaintiffs and the other Extra Expense Declaratory Judgment Class Members' rights and Defendants' obligations under the policies to reimburse Plaintiffs and the other Extra Expense Declaratory Judgment Class Members for the full amount of Extra Expense losses incurred by Plaintiffs in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

90.     Pursuant to 28 U.S.C. § 2201, Plaintiffs and the other Extra Expense Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

21

a.  Plaintiffs and the other Extra Expense Declaratory Judgment Class Members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

b.  Defendants are obligated to pay Plaintiffs and the other Extra Expense Declaratory Judgment Class Members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the relevant time period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the other Class Members, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

a.  Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiffs as Class representatives, and appointing Plaintiffs' undersigned attorneys as Counsel for the Classes;

b.  Entering declaratory judgments on Counts I – III in favor of Plaintiffs and the members of the Income Protection Declaratory Judgment Class, the Civil Authority Declaratory Judgment Class, and Extra Expense Declaratory Judgment Class, as follows:

    i.  Business Income, Civil Authority, and Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

ii.     Defendants are obligated to pay for the full amount of the Business Income, Civil Authority, and Extra Expense losses incurred and to be incurred related to COVID-19, the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

c.   Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

d.   Ordering Defendants to pay attorneys' fees and costs of suit; and

e.   Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated: November 18, 2020

Respectfully submitted,

By: */s/ Beaujeaux de Lapouyade*
Beaujeaux de Lapouyade, Esq.
North Carolina Bar No. 51255
bdelapouyade@merlinlawgroup.com
William F. "Chip" Merlin, Jr.
(*Pro Hac Vice* Admission Pending)
Florida Bar No.   364721
cmerlin@merlinlawgroup.com
**MERLIN LAW GROUP, P.A.**
777 S. Harbour Island Blvd.,
Suite 950
Tampa, FL 33602
Telephone: (813) 229-1000
Facsimile: (813) 229-3692

Adam M. Moskowitz
(*Pro Hac Vice* Admission Pending)
Florida Bar No. 984280
adam@moskowitz-law.com
Adam A. Schwartzbaum
(*Pro Hac Vice* Admission Pending)
Florida Bar No. 93014

23

adams@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

Lawrence E. Bathgate, II, Esq.
(*Pro Hac Vice* Admission Pending)
NJ Bar No. 222621965
lbathgate@bathweg.com
John J. Reilly, Esq.
(*Pro Hac Vice* Admission Pending)
NJ Bar No. 014391977
jreilly@bathweg.com
Ryan M. Farrell, Esq.
(*Pro Hac Vice* Admission Pending)
NJ Bar No. 276372018
rfarrell@bathweg.com
**BATHGATE, WEGENER & WOLF, P.C.**
One Airport Road
P.O. Box 2043
Lakewood, North Carolina 08701
Telephone: (732) 363-0666