IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
Case No. 2:20-cv-00077-M

| | |
|---|---|
| PALM AND PINE VENTURES, LLC, and<br>MDH GLOBAL, LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>CERTAIN UNDERWRITERS AT<br>LLOYD'S LONDON, UNDERWRITERS<br>AT LLOYD'S LONDON KNOWN AS<br>SYNDICATE XLC 2003, CNP 4444, NVA<br>2007, QBE 1886, ARG 2121, and ASC 1414,<br>and HDI GLOBAL SPECIALTY SE.<br><br>        Defendants. | ORDER |

This matter comes before the court on Defendants' motion to dismiss. DE 18. Plaintiffs suspended operations during the COVID-19 pandemic and seek declarations that their commercial property insurance policies cover the resulting economic losses. Courts across the country have grappled with similar claims, and the parties have fully briefed their positions on these policies. For the reasons below, the court grants Defendants' motion and dismisses Plaintiffs' claims.

### I. Background

#### A. Plaintiffs' Summary of Facts

Plaintiffs make the following factual allegations—as distinct from legal conclusions or unsupported inferences—which the court accepts as true. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

**The Policies:** Plaintiffs operate vacation rental businesses. DE 1 ¶¶ 4–5. In February 2020, they renewed commercial property insurance policies (the Policies) with Defendants on two

properties in Kill Devil Hills, North Carolina. DE 1 ¶¶ 16–17; *see also* DE 18-2.[1] Aside from insuring different premises, the Policies match in all material respects. DE 1 ¶ 17; DE 18-1 at 2. At all relevant times, the Policies were in effect, DE 1 ¶¶ 16–17, and Plaintiffs complied with their contractual obligations, *see* DE 1 ¶ 53.

Plaintiffs characterize the Policies as "all-risk" agreements under which "all risks of loss are covered unless they are specifically excluded." DE 1 ¶ 19. The Policies provide: "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." DE 18-2 at 31. Plaintiffs submitted business interruption insurance claims under the Policies' Vacation Rental Business Income Coverage. DE 1 ¶ 21.

Plaintiffs believe three provisions cover the economic losses they sustained after suspending their operations—the Business Income, Extra Expense, and Civil Authority provisions. *See* DE 1 ¶¶ 76, 83, 90; *see also* DE 1 at 22–23. The Business Income and Extra Expense provisions cover economic losses sustained when the insured's operations are suspended because of a "direct physical loss to property" at the insured premises. *See* DE 18-2 at 20. The Policies temporally limit coverage under these provisions to the "period of restoration" that

---

[1] A copy of one of the operative Policies is filed as Exhibit A to Defendants' Motion to Dismiss. *See* DE 18-2; *see also* DE 18-1 at 2 n.2 (explaining that the policy attached to Plaintiffs' complaint—while functionally identical—was for a prior year). The Policies are integral to and explicitly replied upon in Plaintiffs' complaint. *See, e.g.*, DE 1 ¶ 17. Plaintiffs also cite Defendants' attachment in their response without questioning its authenticity, *e.g.*, DE 24 at 15 (citing DE 18-2 at 20–24), so the court relies on this attachment for the relevant policy language, *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (explaining that courts can rely on defendants' attachments under these circumstances without converting a motion to dismiss into one for summary judgment).

a) Begins with the date of direct physical loss caused by or resulting from any Covered Cause of Loss at the described premises; and
  b) Ends on the date by which the property at the described premises should have been repaired, rebuilt or replaced with all due reasonable speed and of similar quality.

*See* DE 18-2 at 23–24.[2] Plaintiffs also seek relief under the Civil Authority provision. DE 1 ¶ 83; *see also* DE 1 ¶ (describing this as an independent basis for business interruption coverage). The Civil Authority provision covers lost business income and extra expenses incurred when government actions deny access to the insured premises as a result of a "direct physical loss to property" somewhere else. *See* DE 18-2 at 21; DE 1 ¶ 27.

**The Claims:** Physical substances—coronavirus particles—cause COVID-19. DE 1 ¶ 33. These viral particles can be transmitted through droplets in the air and contact with "contaminated surfaces." DE 1 ¶¶ 33, 35, 42. In spring 2020, civil authorities responding to the COVID-19 "public health emergency" issued orders "restricting and prohibiting access to Plaintiffs' insured properties" and the surrounding areas. *See* DE 1 ¶¶ 40, 44, 50 (suggesting these stemmed from "dangerous physical conditions"). Plaintiffs emphasize the adverse effect of Governor Cooper's March 2021 "stay-at-home" order on their businesses. DE 1 ¶ 45; *see also* DE 18-4 (providing the executive order referenced in Plaintiffs' complaint). The "presence of COVID-19" rendered Plaintiffs' properties "physically uninhabitable." *See* DE 1 ¶ 49. Plaintiffs also allege the virus limited the properties' functions, reduced the properties' values, and "forced physical alterations." *See id.*

---

[2] In the Extended Business Income provision, the Policies set forth conditions under which coverage extends to losses beyond the "period of restoration." *See* DE 18-2 at 20. Plaintiffs mention this provision, DE 1 ¶ 25, but do not directly rely on it in their requests for relief, *cf.* DE 1 ¶¶ 76, 83, 90 (asserting claims under other provisions without reference to Extended Business Income coverage). In any event, coverage under this provision is conditioned on coverage under the Business Income or Extra Expense provisions.

As a result of the coronavirus' "presence" and government orders, Plaintiffs suspended their business operations, lost income, and incurred extra expenses. DE 1 ¶ 51. Defendants denied Plaintiffs claims under the Policies. DE 1 ¶¶ 53, 55.

### B. Procedural History

Plaintiffs filed this putative class action seeking declarations that the three above-mentioned provisions of the Policies cover their claimed losses and that Defendants are thus obligated to pay. DE 1 ¶¶ 76, 83, 90. Defendants moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. DE 18. Plaintiffs responded in opposition, DE 24, and Defendants replied, DE 29. In essence, the parties dispute whether Plaintiffs' inability to use their rental properties triggers coverage under the Policies. The parties have also submitted scores of decisions from courts throughout the country addressing similar suits. *See* DE 30; DE 31; DE 36; DE 37; DE 40; DE 41; DE 42; DE 43; DE 44; DE 45; DE 46; DE 47; DE 48; DE 49; DE 51.

## II. Legal Standards

### A. Procedural Standards

Rule 8 of the Federal Rules of Civil Procedure requires a pleading to contain, *among other things*, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A defendant against whom a claim has been brought can challenge a pleading's sufficiency under Rule 8 by moving the court under Rule 12(b)(6) to dismiss the pleading for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556

4

U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting on conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *See Iqbal*, 556 U.S. at 678–79 (quoting Fed. R. Civ. P. 8(a)(2)) ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'- -'that the pleader is entitled to relief.'"); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'").

### B. Applicable Substantive Law

Courts sitting in diversity apply the substantive law of the state in which the action arose. *See Adams v. Am. Optical Corp.*, 979 F.3d 248, 255 (4th Cir. 2020); *see also* DE 1 ¶¶ 4–9. All agree that North Carolina law applies here. Thus, the court must predict how the Supreme Court

5
Case 2:20-cv-00077-M   Document 52   Filed 02/22/22   Page 5 of 14

of North Carolina would interpret the provisions at issue. *Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C.*, 433 F.3d 365, 369 (4th Cir. 2005).

Determining the meaning of insurance policy language presents questions of law governed by general contract interpretation principles. *Accardi v. Hartford Underwriters Ins. Co.*, 373 N.C. 292, 295, 838 S.E.2d 454, 456 (2020). Courts should strive to arrive at the coverage the parties intended at the issuance of the policy. *Id.* (quoting citing *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C., 348, 354, 172 S.E.2d 518, 522 (1970)). Terms left undefined by the policies must be given ordinary meanings consistent with the context in which they appeared. *Id.*; 838 S.E.2d at 457.

Unambiguous policy language must be construed according to its terms. *Id.*; 838 S.E.2d at 456–57. While ambiguous policy language must be construed in favor of the insured, ambiguity exists only if the court finds the language "fairly and reasonably susceptible to either of the constructions for which the parties contend." *See id.*; 838 S.E.2d at 457 (quoting *Wachovia Bank*, 276 N.C. at 354, 172 S.E.2d at 522) (explaining that differing interpretations do not necessarily signal ambiguity). In any event, "[t]he court may not remake the policy or 'impose liability upon the company which it did not assume and for which the policyholder did not pay.'" *Id.* Finally, "[t]he party seeking coverage under an insurance policy bears the burden 'to allege and prove coverage.'" *N. Carolina Farm Bureau Mut. Ins. Co., Inc. v. Martin*, 376 N.C. 280, 286, 851 S.E.2d 891, 895 (2020).

### III. Discussion

The phrase "direct physical loss to property" operates as a triggering condition for coverage under the contested provisions. The Business Income and Extra Expense provisions cover only those claims resulting from a "direct physical loss to property" at the insured premises. DE 18-2

at 20. Similarly, the Civil Authority provision covers only those claims resulting from government responses to a "direct physical loss to property" elsewhere. DE 18-2 at 21. The phrase thus functions as a gatekeeper to Plaintiffs' recovery.

Plaintiffs' allegations must support plausible inferences that these provisions cover the claimed losses. Deciding whether they do so requires first looking to North Carolina law to determine what constitutes a "direct physical loss to property" under the Policies. Plaintiffs' pleadings must then be measured against that requirement. The parties' disagreement flows from differing interpretations of this triggering condition.

Put simply, the crux of this case is whether the inability to use property can trigger coverage under the Policies without accompanying alterations. Plaintiffs say it does, arguing that they experienced a direct physical loss when they "lost the physical use" of their rental properties. *See, e.g.*, DE 24 at 2. Defendants disagree, arguing that controlling precedent requires physical alterations unalleged here. *See* DE 29 at 3, 5. As explained below, the court agrees with Defendants and holds that Plaintiffs have not adequately alleged any physical damage requiring that property be repaired, rebuilt, or replaced.

### A. Interpretation of "direct physical loss to property" under the Policies

At bottom, the parties dispute whether a "direct physical loss to property" requires tangible alterations to that property. The Policies do not define that phrase, nor has the Supreme Court of North Carolina spoken on the issue. Resolving this legal question thus requires predicting how that court would interpret this triggering condition. *Twin City Fire Ins. Co.*, 433 F.3d at 369. Lower court opinions, treatises, and "the practices of other states" inform this prediction. *Id.*

The North Carolina Court of Appeals interpreted similar business interruption insurance provisions in *Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Corp.*, 126 N.C. App. 698,

7
Case 2:20-cv-00077-M   Document 52   Filed 02/22/22   Page 7 of 14

486 S.E.2d 249 (1997). Applicable interpretations by the Court of Appeals control absent convincing evidence that the Supreme Court of North Carolina would decide differently today. *Town of Nags Head v. Toloczko*, 728 F.3d 391, 398 (4th Cir. 2013). Defendants argue *Harry's Cadillac* controls and requires dismissal, *see* DE 29 at 5, while Plaintiffs consider it distinguishable—or at least compatible with their loss-of-use theory, *see* DE 24 at 13–14.

*Harry's Cadillac* controls because the policy language it interpreted does not meaningfully differ from the provisions at issue here. *See Golden Corral Corp. v. Illinois Union Ins. Co.*, No. 5:20-CV-349-D, 2021 WL 4097684, at *6, n.3 (E.D.N.C. Sept. 8, 2021) (unpublished) (finding the same); *cf. Accardi,* 373 N.C. at 296, 838 S.E.2d at 457 (cautioning against following decisions interpreting meaningfully different policy language). Most importantly, *Harry's Cadillac* considered a substantially similar triggering condition. *Compare* 126 N.C. App. at 700, 486 S.E.2d at 251 ("direct physical loss of or damage to property"), *with* DE 18-2 at 20, 21 ("direct physical loss to property"). Indeed, the only discernible difference is that the triggering condition in *Harry's Cadillac* explicitly included the "or damage" language that Plaintiffs read in from elsewhere in the Policies' coverage forms. *See* DE 24 at 10–11 (citing DE 18-2 at 29, 31, 33–34, 47, 51, 53–54, 62) (arguing that the triggering condition must be construed to give effect to the Policies' repeated references to "direct physical loss *or* damage"). Additionally, *Harry's Cadillac* interpreted a nearly identical "period of restoration" provision. *Compare* 126 N.C. App. at 701, 486 S.E.2d at 251, *with* DE 18-2 at 23–24. The court thus finds the relevant policy language materially indistinguishable and treats *Harry's Cadillac* as an on-point statement of law interpreting "direct physical loss to property."

Following *Harry's Cadillac*, the property to which this triggering condition refers must be physically damaged or destroyed. 126 N.C. App. at 701, 486 S.E.2d at 252. Plaintiffs submit a

narrower reading, *see* DE 24 at 14 (suggesting *Harry's Cadillac* bars only claims based on "mere inaccessibility"), but the Court of Appeals made clear that "only those losses requiring repair, rebuilding, or replacement" trigger coverage, *see* 126 N.C. App. at 701, 486 S.E.2d at 251 (incorporating language from the "period of restoration" provision). In doing so, the Court of Appeals closed off Plaintiffs' proposed distinction between tangible damage and intangible losses.

Faced with substantially similar physical-loss-or-damage language, the Court of Appeals rejected a loss-of-use argument and instead insisted that the property be destroyed or damaged. *See Harry's Cadillac*, 126 N.C. App. at 701, 486 S.E.2d at 252; *see also Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 332 (7th Cir. 2021) (noting with approval that "many" courts read physical-loss-or-damage language to refer to total destruction or lesser, reparable harms). Plaintiffs' competing construction relies largely on an unpublished appellate opinion, *see* DE 24 at 11 (citing *Great Am. Ins. Co. v. Mesh Cafe, Inc.*, 158 N.C. App. 312, 580 S.E.2d 431 (2003) (unpublished table decision)), and a recent trial court decision, *see* DE 24 at 9–11 (citing *N. State Deli, LLC v. The Cincinnati Ins. Co.*, No. 20-CVS-02569, 2020 WL 6281507, at *2–3 (N.C. Super. Oct. 09, 2020) (unpublished)). Neither opinion mentions *Harry's Cadillac*, but assuming that they decided this issue differently, the Court of Appeals' published interpretation controls. *See Golden Corral Corp.*, 2021 WL 4097684, at *7 n.4, *10 n.6 (rejecting the same arguments based on the same decisions for the same reasons); *see also Twin City Fire Ins. Co*, 433 F.3d at 370 (instructing that federal courts sitting in diversity are not bound by state trial court opinions). Plaintiffs' citation to *Fountain Powerboat Indus., Inc. v. Reliance Ins. Co.* reinforces this conclusion as that decision distinguished *Harry's Cadillac* based on the presence of an ingress/egress clause also absent here. *See* 119 F. Supp. 2d 552, 556–57 (E.D.N.C. 2000) (noting that both parties "agree[d] that business interruption coverage generally requires that the interruption be caused by damage

to the covered property"). By requiring physical damage or destruction, *Harry's Cadillac* resolves the parties' underlying dispute about whether the property must be tangibly altered.

Context compels that any such damage or destruction tangibly alter the property. *See Accardi*, 373 N.C. at 295, 838 S.E.2d at 457 (requiring that policy language be construed in context). The "period of restoration" provision on which the Court of Appeals based its holding referred to property being repaired, rebuilt or replaced with that of "similar quality." *See Harry's Cadillac*, 126 N.C. App. at 701–02, 486 S.E.2d at 251; *see also* DE 18-2 at 24 (imposing the same conditions under the Policies' corresponding provision). The ordinary meaning of this commercial property insurance policy language suggests reconstruction using comparable materials, while Plaintiffs' broader reading of "repair" is rooted in a medical definition. *See* DE 24 at 18 (quoting *Repair, Merriam-Webster*, https://www.merriam-webster.com/dictionary/repair (last accessed April 12, 2021)) (arguing that "to restore to a sound or healthy state" encompasses the remediation of intangible harms); *Repair, Merriam-Webster*, https://www.merriam-webster.com/dictionary/repair (last accessed Feb. 17, 2022) (including the same as "Medical Definition of *repair* (Entry 1 of 2)").

Plaintiffs have not presented, nor has the court found, persuasive evidence that the Supreme Court of North Carolina would discard this tangible alteration requirement. Most courts construing similar policy language have concluded that physical loss to property requires tangible damage. *See Death & Taxes, LLC v. Cincinnati Ins. Co.*, No. 5:21-CV-125-D, 2022 WL 337196, at *1 (E.D.N.C. Feb. 2, 2022) (unpublished) (summarizing the "overwhelming[]" support for this conclusion). This majority position includes both decisions from this district. *See Golden Corral Corp.*, 2021 WL 4097684, at *7 (concluding that a "Period of Recovery" provision presupposes tangible alteration to the property); *Summit Hosp. Grp., Ltd. v. Cincinnati Ins. Co.*, No. 5:20-CV-

254-BO, 2021 WL 831013, at *4 (E.D.N.C. Mar. 4, 2021) (unpublished) (concluding that allowing intangible harms to trigger coverage would render ineffective provisions limiting coverage to the time necessary to "rebuild, repair or replace the damaged property").

Turning to treatises, this tangible alteration requirement finds more support in resources referenced by the Supreme Court of North Carolina. A leading insurance treatise states that direct physical loss requirements have been "widely held" to exclude intangible losses and demand "distinct, demonstrable, physical alteration of the property" to trigger coverage. *See* Steven Plitt et al., *10A Couch on Insurance* § 148:46 (3d ed. Dec. 2021). Several federal circuit courts considering comparable claims have relied on the same treatise for the same propositions. *See, e.g.*, *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 891 (9th Cir. 2021) (quoting the same); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) (quoting the same); *Santo's Italian Cafe LLC v. Acuity Ins. Co.*, 15 F.4th 398, 402–03 (6th Cir. 2021) (relying on this and other sections). *Couch's* widely-cited statements carry persuasive weight when predicting the path the Supreme Court of North Carolina would follow as that court has long relied on this resource when determining the scope of insurance coverage. *See, e.g.*, *N. Carolina Farm Bureau Mut. Ins. Co. v. Sadler*, 356 N.C. 178, 183, 711 S.E.2d 114, 117 (2011); *Nationwide Mut. Ins. Co. v. Land*, 318 N.C. 551, 560, 350 S.E.2d 500, 505 (1986); *Price v. State Cap. Life Ins. Co.*, 261 N.C. 152, 155, 134 S.E.2d 171, 173 (1964).

Finally, this tangible alteration requirement precludes the adoption of an apparent minority position about invisible contaminants. Some pre-pandemic decisions deviated from the "widely held" interpretation above and "broadened" the triggering condition by finding it satisfied when odors or gasses rendered physically unaltered premises "uninhabitable." *See* Scott G. Johnson, *What Constitutes Physical Loss or Damage in A Property Insurance Policy?*, 54 TORT TRIAL &

INS. PRAC. L.J. 95, 101–02, 114 (2019) (citing *W. Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52 (Colo. 1968)) (discussing decisions that followed the Colorado Supreme Court's loss-of-use reasoning); *see also* Steven Plitt et al., *supra* (citing *W. Fire Ins. Co.*, 437 P.2d at 52) (contrasting this view with the majority position requiring tangible alteration). While a smattering of state and federal courts have denied motions to dismiss based on this theory, *see* DE 24 at 19–21 (collecting cases), this court may not broaden the Court of Appeals' controlling interpretation of "direct physical loss" to do so, *see Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp.*, 506 F.3d 304, 314–15 (4th Cir. 2007) (cautioning federal courts against creating or expanding state common law when predicting how the highest state court would address an issue).

In sum, *Harry's Cadillac* governs the Policies' materially indistinguishable "direct physical loss to property" requirement. No convincing evidence suggests that the Supreme Court of North Carolina would discard this interpretation. Thus, Plaintiffs must allege some physical damage or destruction requiring that property be repaired, rebuilt, or replaced.

### B. Application of this interpretation to Plaintiffs' complaint

As pleaded, Plaintiffs' claims stand or fall with their loss-of-use theory. When evaluating cursory allegations of "damage," common sense and judicial experience caution against inferring an alternative theory of coverage requiring alterations Plaintiffs argue at length are unnecessary. *See Iqbal*, 556 U.S. at 679 (noting the role of these considerations in context-specific Rule 12(b)(6) determinations); DE 24 at 9–21 (asserting that they need not show tangible physical damage because losses of functionality satisfy an independent triggering condition). Plaintiffs have not alleged that property at the insured premises was damaged or destroyed in a manner requiring repair, rebuilding, or replacement. Likewise, they have not alleged that any government orders

12
Case 2:20-cv-00077-M   Document 52   Filed 02/22/22   Page 12 of 14

were issued in response to such damage or destruction elsewhere. Thus, Plaintiffs have not stated plausible claims for relief.

Plaintiffs' allegations that the coronavirus caused "damage" to the covered premises do not create plausible inferences of coverage under the Business Income and Extra Expense provisions. In the closest-to-the-point paragraph, Plaintiffs list various ways they believe the triggering condition has been met:

> The presence of COVID-19 caused direct physical loss of and/or damage to the Insured Property under the Policy by, among other things, damaging the property, denying access to the property, preventing customers and patients from physically occupying the property, causing the property to be physically uninhabitable by customers and patients, causing its function to be nearly eliminated or destroyed, and/or causing a suspension of business operations on the premises. Plaintiff also suffered a "direct physical loss of and damage to" its property in the form of diminished value, lost income, and forced physical alterations during the period of restoration.

DE 1 ¶ 49. Most of these allegations pertain only to Plaintiffs' loss-of-use theory, and the remainder lack the necessary factual enhancements to support plausible claims.

To start, naked assertions that coronavirus particles somehow "damag[ed] the property" and "forced physical alterations" are "merely consistent with" coverage. *See Twombly*, 550 U.S. at 557 (distinguishing these inadequate assertions from allegations plausibly suggesting the defendant's liability). Moreover, Plaintiffs' argument that these allegations preclude dismissal relies on the cramped reading of *Harry's Cadillac* rejected above—that it bars only claims based on "mere inaccessibility." *See* DE 24 at 14. The complaint contains no factual content that pushes the inference of the damage required by *Harry's Cadillac* at the covered premises from possible to plausible, so Plaintiffs' claims under the Business Income and Extra Expense provisions must be dismissed.

Similarly, Plaintiffs have not plausibly alleged that any government orders affecting their business were issued in response to such damage elsewhere. Plaintiffs identify no property outside the insured premises that had to be repaired, replaced, or rebuilt. Instead, their complaint and the executive order to which they refer suggest that government responses were issued to slow the spread of the coronavirus among people. *See* DE 1 ¶¶ 39–45; *see also* DE 18-4 at 2–3. Thus, Plaintiffs' claim under the Civil Authority provision must also be dismissed.

### IV. Conclusion

In sum, Plaintiffs' pleadings do not present allegations plausibly suggesting the "direct physical loss to property" necessary to trigger coverage under the Policies. Thus, Defendants' motion to dismiss [DE 18] is GRANTED, and Plaintiffs' claims are DISMISSED WITH PREJUDICE. The Clerk of Court is DIRECTED to close this case.

SO ORDERED this 22d day of February, 2022.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE